## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ANANISE LAMONT GIVENS**                                   **CIVIL ACTION**

**VERSUS**                                                                  **NO. 15-732**

**ORLEANS PARISH**                                            **SECTION "A"(3)**
**SHERIFF'S OFFICE, ET AL.**

### REPORT AND RECOMMENDATION

Plaintiff, Ananise Lamont Givens, a state pretrial detainee, filed this civil action pursuant to 42 U.S.C. § 1983 against the Orleans Parish Sheriff's Office and Sheriff Marlin N. Gusman. In this lawsuit, plaintiff left blank that portion of the complaint form designated for the statement of his claim; however, in another part of the complaint, he referenced medical care. To better understand the factual bases of plaintiff's claim, the Court held a Spears hearing on May 13, 2015. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

At that hearing, plaintiff clarified that he is in fact claiming that he has been denied adequate medical care while incarcerated within the Orleans Parish Prison system. Specifically, he testified that has a history of taking Prilosec (a drug used to treat his gastroesophageal reflux disease) and Depakote (a drug used to treat his bipolar disorder) but has not been given those medications while

incarcerated.  He also testified that the medical personnel have refused to prescribe him a special diet or to arrange for the hernia surgery he believes he needs.  After that hearing, the undersigned issued an order directing defense counsel to provide the Court with plaintiff's medical records and grievance records.[1]  Those records have been provided and filed into this federal record.

## I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).[2]  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –

---

[1]     Rec. Doc. 11.

[2]     "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

    (i) is frivolous or malicious;
    (ii) fails to state a claim on which relief may be granted; or
    (iii) seeks monetary damages against a defendant who is immune
    from such relief.

28 U.S.C. § 1915(e)(2)(B).

   A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994).

   A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>*In re* Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[3] and fully considering his <u>Spears</u> hearing testimony, the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II.  Defendants

As an initial matter, the Court notes that plaintiff has not named a proper defendant with respect to his medical claim.

As noted, plaintiff sued the Orleans Parish Sheriff's Office.  However, a parish sheriff's office simply is not a legal entity subject to suit.   <u>Cozzo v. Tangipahoa Parish Council-President Government</u>, 279 F.3d 273, 283 (5th Cir. 2002); <u>see also</u> <u>Naquin v. Orleans Parish Sheriff's Office</u>, Civ. Action No. 11-2878, 2012 WL 262988, at *3 (E.D. La. Jan. 9, 2012), <u>adopted</u>, 2012 WL 262877 (E.D. La. Jan. 30, 2012); <u>Jacobson v. Gusman</u>, Civ. Action No. 09-3695, 2009 WL 2870171, at *2 (E.D. La. Aug. 10, 2009), <u>adopted</u>, 2009 WL 2957961 (E.D. La. Aug. 26, 2009); <u>Haywood v. Gusman</u>, Civ. Action No. 06-3517, 2008 WL 516714, at *3 (E.D. La. Feb. 26, 2008); <u>Causey v. Parish of Tangipahoa</u>, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); <u>Ruggiero v. Litchfield</u>, 700 F. Supp. 863, 865 (M.D. La. 1988).  Accordingly, the claim against the Orleans Parish Sheriff's Office should be dismissed.

Plaintiff has also sued Orleans Parish Sheriff Marlin N. Gusman.  Although a parish sheriff can be a proper defendant in some instances, plaintiff has failed to state a proper claim against Sheriff Gusman in either his official capacity or his individual capacity in the instant case.

---

[3]     The court must liberally construe a *pro se* civil rights complaint.  <u>See</u> <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994).

4

As to any claim against Sheriff Gusman in his official capacity, it is clear that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, any official-capacity claim against Sheriff Gusman would in reality be a claim against the local governmental body itself. Picard v. Gusman, Civ. Action No. 12-1966, 2012 WL 6504772, at *4 (E.D. La. Nov. 26, 2012), adopted, 2012 WL 6504528 (E.D. La. Dec. 13, 2012); Alexander v. City of Gretna, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); Weatherspoon v. Normand, Civ. Action No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010). However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his rights were

violated as a result of a policy or custom, much less identify such a policy or custom.  For that

reason, it is clear that he has failed to state a proper official-capacity claim against Sheriff Gusman.

Plaintiff likewise has not stated a proper individual-capacity claim against Sheriff Gusman.

"Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct

giving rise to a constitutional violation.  This standard requires more than conclusory assertions:

The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276

F.3d 736, 741 (5th Cir. 2002) (citation omitted).  Moreover, "[p]ersonal involvement is an essential

element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

In this lawsuit, it is not alleged that Sheriff Gusman has had any personal involvement in plaintiff's

medical care; on the on the contrary, at the Spears hearing, plaintiff conceded that the sheriff has not.

Moreover, although Sheriff Gusman is a supervisory official, it is clear that he may not be held liable

pursuant to 42 U.S.C. § 1983 under any theory of strict liability[4] or vicarious liability.[5]

For all of these reasons, plaintiff's claim against Orleans Parish Sheriff Marlin N. Gusman

should be dismissed.

Accordingly, plaintiff has failed to name a proper defendant with respect to his medical

claim.  Further, out of an abundance of caution, the undersigned notes that even if plaintiff had

---

[4]     Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[5]     Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." ); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or respondeat superior liability."); Evans, 2008 WL 2223281, at *2.

named a proper defendant or were allowed another opportunity to amend his complaint to attempt to name one, his underlying medical claim would still be subject to dismissal because it is frivolous.

### III. Plaintiff's Claim

It is clear that all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). *Even if* the ailments about which plaintiff complains in this lawsuit rise to the level of serious medical needs,[6] he cannot show that those needs have been met with deliberate indifference.

Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

---

[6] The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)  (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."  Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).  That is the case here.  In the instant case, the Court ordered the Orleans Parish Sheriff's Office to produce copies of plaintiff's medical records, and, as noted, those records have been filed into this federal record.[7]  Those records reflect that plaintiff has received continued evaluations and care for a variety of medical conditions while incarcerated at Orleans Parish Prison, including but not limited to the ailments he mentions in this lawsuit.  With respect to the specific ailments mentioned herein, the records include the following information:

10/22/14       A Medical Intake Screening was conducted.  It was noted that plaintiff was bipolar and had a chemical imbalance for which he had taken Doxepin in the past.  He was referred for a review by a psychiatrist.  He denied having any other medical problems and was in no apparent distress.

10/25/14       A Psychiatric Intake Screening was conducted by Dr. Charles Higgins. Plaintiff reported that he was bipolar and had taken previously taken medications but not within the past year.  He also reported significant substance abuse.  Dr. Higgins ordered that a decision on medication be

_____

[7]       Copies were also provided to plaintiff for his use in this proceeding.

deferred to allow for "detoxification and a period of observation."  Plaintiff was placed in the general population and his outpatient mental health records were ordered.

10/30/14   The nurse collected a sick call request in which plaintiff requested medical attention, stating that he needed surgery.  When the nurse examined plaintiff that day, he complained of pain in the groin, stating that he had a history of a hernia for two years.  He stated that, before his incarceration, it was recommended that he have hernia surgery, but that he had not had the surgery.  The nurse noted that plaintiff's breathing was even and unlabored, he was in no apparent distress, and his groin was tender to the touch.  The nurse referred plaintiff to the medical provider.

11/5/14   Plaintiff was seen in the medical department complaining of hernia pain.  He noted that he had experienced such pain for the past two years, he was constipated, and he suffered from gastroesophageal reflux disease ("GERD").  The notes reflected that he was in no apparent distress.  He was prescribed Colace (a stool softener), Ranitidine (a drug used to treat GERD), magnesium citrate (a laxative), and Piroxicam (a pain medication).

11/12/14   A health assessment was conducted.  That assessment reflected that plaintiff had a  history of, *inter alia*, acid reflux (having taken Prilosec prior to his incarceration) and mental illness (having taken Prozac and Depakote). It was noted that plaintiff had sick calls pending for the noted medical conditions.

| | |
|---|---|
| 11/19/14 | Plaintiff complained that he was having trouble breathing, and medical personnel were summoned to the area where he was housed.  Plaintiff stated that his acid reflux sometimes caused him to have difficulty breathing.  His vital signs were within normal ranges and his lungs were clear; however, he appeared to have sinus congestion.  He was prescribed Zantac (a drug used to treat GERD) and antacid. |
| 11/21/14 | Plaintiff was  seen in the medical department, complaining of hernia pain.  He was prescribed Mobic (an NSAID pain medication) and a hernia belt.  It was noted that the medical department would request a surgery consultation concerning the hernia. |
| 11/24/14 | A request for a general surgery consultation was faxed to the LSU Health System. |
| 12/9/14 | Plaintiff was seen in the medical department, complaining of GERD, bipolar disorder, and a hernia.  He was prescribed Prilosec and Maalox to treat the GERD symptoms. |
| 12/10/14 | A follow-up request for a general surgery consultation was faxed to the LSU Health System. |
| 12/10/14 | Plaintiff was referred for a behavioral health assessment.  The notes reflected that he was "in good spirits" but reported increased stress and difficulty sleeping.  He complained of neck pain and was informed that he had a sick call scheduled.  It was noted that a behavioral health follow-up would be scheduled in three weeks. |

1/8/15          A behavioral health assessment and follow-up were conducted. The notes reflected that plaintiff's affect was "appropriate"; however, he complained that he was "disgusted" because he was not getting a "specific medication for [his] stomach ailment."  He was informed that he had a sick call scheduled and was encouraged to discuss that issue with the doctor.  It was noted that a behavioral health follow-up would be scheduled in a month.

1/9/15          Plaintiff was seen in the medical department complaining of a stuffy nose and itchy throat.  He was prescribed saline nasal spray as needed.

2/6/15          Plaintiff was seen in the medical department for GERD.  It was noted that he had a history of ulcers and was experiencing problems with "nasal stuffiness" and bowel movements.  He was prescribed Mylanta (used to treat GERD), Citroma (a laxative), and Colace.

2/18/15         Another behavioral health assessment and follow-up were conducted. Plaintiff stated that he was "alright," his affect, mood, and behavior were "appropriate," he denied problems sleeping or hallucinations, and he was found to be "pleasant, cooperative."  He showed no notable signs of distress and was receptive to feedback concerning modification of maladaptive behaviors.  It was noted that "[t]reatment not indicated at this time, but that follow-up would be done as needed."

3/9/15          Plaintiff was seen in the medical department for a follow-up visit for his GERD.  The degree of the control of the condition was classified as "Good" and no change in medication was required.

3/13/15         Plaintiff's prescription for ibuprofen was discontinued and Tylenol was substituted.

4/30/15         Plaintiff was seen in the medical department for a follow-up visit for his GERD and hernia pain. He was prescribed Mylanta and Tylenol.

In light of the foregoing, it is evident that plaintiff's medical complaints have not been ignored. On the contrary, he has repeatedly been examined after submitting sick call requests, and has been treated with a variety of medications. Although he obviously feels that more should be done for him, that is not determinative. Absent exceptional circumstances, an inmate's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). And, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges. Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis whatsoever to engage in such second-guessing here.

The foregoing conclusion is not changed by the fact that plaintiff's various ailments have not been cured. Where, as here, an inmate has in fact received medical treatment, federal constitutional

protections are not violated just because that treatment has been unsuccessful or because pain persists despite the treatment.  Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Nor is the foregoing conclusion changed by the fact that plaintiff's medical care "may not have been the best money could buy."  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).  In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Rather, claims of negligence or medical malpractice present issues of *state* law for *state* courts, not federal constitutional issues for a federal court.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether plaintiff's medical treatment has been subpar in some respect, whether his medical problems persist despite treatment, or whether he is dissatisfied with his care; rather, it is only whether he has a serious medical need which has been met with deliberate indifference.  He does not.  Accordingly, even if plaintiff had

named a proper defendant, which he did not, his medical claim would still be subject to dismissal because it is legally frivolous.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[8]

New Orleans, Louisiana, this twenty-second day of September, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[8]   Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

14